## IN THE MATTER OF OLAF OMSTED, A BANK-RUPT.

May 19, 1914.

1. *Evidence—Judicial notice:* The court takes judicial notice of the recent tariff act, 38 Stat. 114, and of its depressing effect upon the stock market, and the sugar industry, in Hawaii.

2. *Bankruptcy—Administration; Sale of assets; Trustee's duty:* The trustee may be surcharged for loss arising from want of due diligence in reducing the property of the estate into money. In the case of assets of corporation stock, the court may surcharge for the difference between the amount actually realized from sale and a fair maximum figure reached in the open market, and justified by conditions, during the time when the stock could have been sold by the trustee.

*In Bankruptcy:* On trustee's petition for allowance of final accounts.

*J. W. Mason,* trustee, *pro se.*

CLEMONS, J.   The trustee's final accounts and petition for discharge are before the court; and inasmuch as the question suggests itself, whether or not the trustee should be surcharged for the depreciation in value of certain assets of the bankrupt, consisting of fifty-five shares of the cap-ital stock of the Olaa Sugar Company, held by the trustee for at least six years after the time when they should have been sold, the court has retained the accounts for consideration and given the usual notice to creditors of a hearing thereon, with the intention, however, of referring the matter finally to the referee at Hilo for such other action, including the declaration of dividends, as may be necessary to close the administration. No creditors or other parties in interest appeared at the hearing, and the court examined Mr. Albert F. Afong, a member of the Honolulu Stock and Bond Exchange, and a qualified witness as to values, subpoenaed by the court, as to the market value of

this stock during the period since it was obtained by the trustee, to-wit, July 13, 1907, according to the trustee's statement of April 23, 1914, on file herein. Mr. Afong's testimony is that the highest price reached during this period was $9 a share (during the year 1912), and the lowest 50 cents (during the year 1913); that a good deal of the stock sold in 1912 at figures around $8 or $9; that in 1912 the lowest price was $3-7/8, and that a fair maximum figure for that year and for the period since July 13, 1907, was $7 or $8. He also testified that in 1907 the price of the stock was very steady, running from $3 to $3.50, and that in 1913 the highest price was $4.50. And his testimony showed further, that these maximum prices were justified by the general tone of the market, the high price of sugar, and the large sugar crop of the Olaa plantation, owned by this corporation.

[1] The court takes judicial notice of the recent tariff act and of its depressing effect upon the local stock market and upon the sugar industry of Hawaii. See 4 Wigmore, Evidence, sec. 2580. These considerations account for the low price of 75 cents received by the trustee when he sold in January, 1914. They do not, however, excuse the trustee's want of diligence. On May 24, 1911, this court made an order directed toward the prompt closing of estates by all delinquent trustees; that order included this trustee, who had been in office since early in 1902, and who then had as trustee a small interest in, or claim to, lands which on July 13, 1907, he exchanged for the Olaa shares,—an exchange which was later approved by the court on a petition for such approval, and for leave to sell, not filed by the trustee, however, until August 20, 1913, and then only after repeated requests from the court,— the first request made by the clerk's letter of the date of May 26, 1911, acknowledged by the trustee's letter of June 28, 1911, followed by the clerk's letter of reminder of July 7, 1911, and the judge's own letters of December 10, 1912,

April 8, 1913, May 23, 1913, and October 17, 1913. The trustee in reply always expressed the purpose of taking early action to close the estate; but the demands of the trustee's own business were pleaded as an excuse for delay.

It seems unnecessary to cite authorities for the proposition that one who assumes such a position of trust should be responsible for any losses arising from his want of care and diligence; the criterion in such cases being the care and diligence exercised by prudent persons in the management of their own affairs. See *Hill v. Evans,* 114 Mo. App. 715, 91 S. W. 1022, 1024. The case of *In re M. D. Monsarrat,* a bankrupt, 3 U. S. Dist. Ct. Haw. 641, indicates the disposition of this court in cases of such neglect, and would authorize the surcharging of a negligent trustee in such a case as the present. It may also be noted in this connection, that the statute under which the trustee derived his authority, provides that trustees "shall reduce to money the property of the estate . . . and close up the estate as expeditiously as is compatible with the best interests of the parties at interest." Act, sec. 47 (a) (2). See Remington, Bankruptcy, secs. 23, 908. Here, the trustee had already taken over five years to dispose of the interest in lands by exchange for this stock, so that the delay has really been since early in 1902 instead of since the above date of 1907.

It is due to the trustee to state that his good faith has never been questioned. In fact his neglect has injured himself more than any one else, as he is a creditor having an allowed claim of $2,761.75 out of a total aggregate of $5,602.88 of claims allowed. His loss of vouchers in the San Francisco fire of 1906 embarrassed him somewhat, but he lost no data which prevented the sale of this stock. It may be noted that there are data in the files of court and the marshal's office accounting for almost all of the payments which these vouchers represent; the other payments aggregated only about $40 and would be reasonably ac-

counted for by the course and requirements of the administration. As to the former items: the person giving the receipt for the largest item was the trustee himself, a secured creditor, who in these accounts makes further and sufficient acknowledgment; and in the case of the one other large item, the court has been assured that the secured creditor, since deceased, who is alleged to have given the receipt, actually received the money. As this assurance was given by an officer of this court, attorney for the creditor, and husband of one of the creditor's heirs, having an intimate knowledge of the creditor's estate, the court feels safe in relying upon the trustee's accounts in this particular. Furthermore, the latter secured creditor received payment through the sale of corporation stock of the bankrupt, held by himself as collateral, the details of which sale the court has ascertained from the purchaser and from others having knowledge,—all as shown by correspondence on file herein.

It will accordingly be ordered that the trustee's accounts to March, 1914, be approved, except that for the loss aforesaid, hereby found to have been due to the negligence of the trustee, the trustee be surcharged the difference between the 75 cents per share received from the sale of the fifty-five shares of Olaa stock, and the highest fair average market price of $7 aforesaid. Inasmuch as the estate will be eventually liable to the trustee for commissions of $60.66 already earned, he may deposit in bank to the credit of the estate the amount of the surcharge, $343.75, less this amount of $60.66.

The case will, as above suggested, be now referred to the referee at Hilo, for further disposition.